**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200522-U

Order filed June 8, 2022

---

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| WILLIAM R. PUGH, | ) | Will County, Illinois. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-20-0522 |
| and | ) | Circuit No. 11-D-95 |
| | ) | |
| JEAN ADA PUGH, | ) | |
| | ) | Honorable David Garcia, |
| Respondent-Appellee. | ) | Judge, Presiding. |

---

JUSTICE SCHMIDT delivered the judgment of the court.
Presiding Justice O'Brien and Justice Holdridge concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion when dismissing petitioner's petition to reduce or terminate maintenance, or when finding petitioner in indirect civil contempt of court.

¶ 2    Petitioner, William R. Pugh, appeals from the Will County circuit court's denial of his petition to reduce or terminate maintenance, arguing the court did not consider the factors or make findings under sections 504 and 510 of the Illinois Marriage and Dissolution of Marriage Act (Act)

(750 ILCS 5/504, 5/510 (West Supp. 2015)). He argues the circuit court abused its discretion when finding him in indirect civil contempt of court. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On January 18, 2011, petitioner filed a petition for dissolution of marriage from his wife, respondent Jean Ada Pugh. Petitioner and respondent have two children together—the older son, C.P., was then 16 years old and the younger son, A.P., was then 11 years old. The parties entered into a marital settlement agreement (settlement agreement) on November 6, 2012, covering questions of custody, visitation, and support of the children, other support payments, the rights of each party to property, and the division of all marital and nonmarital property. On November 6, the circuit court dissolved the marriage and incorporated the settlement agreement into the judgment. The parties filed multiple competing pleadings during 2012 and into early 2015.

¶ 5        Pertinent to this appeal are pleadings and the circuit court's decisions and orders, beginning with respondent filing a petition for temporary maintenance and child support on January 17, 2012, pursuant to section 501 of the Act (*id.* § 501). Respondent's petition stated she and petitioner each withdrew $130,000 from marital accounts. Respondent used $70,000 for family maintenance, with $60,000 remaining. Petitioner had $99,000 in cash remaining from his $130,000 withdrawal. Petitioner said he moved to New York where he sold commercial real estate but made only $4000 in the prior year. Respondent was underemployed. She asked the court to order petitioner to seek and maintain gainful employment for the support of respondent and their two children (one of whom was significantly injured in a car accident and required therapy to walk and perform daily life tasks).

¶ 6        The court ordered petitioner to provide $99,740.62 remaining in a specified account to respondent's attorney to be placed in a trust account. Respondent was to provide updated bank

account statements to her attorney, who would then disperse $6000 per month to respondent. Respondent was to pay for family healthcare insurance; petitioner was to pay the costs of visits.

¶ 7     Both parties focus their briefs on respondent's petition for maintenance filed March 2, 2015. Therein, respondent alleged their son, C.P., was emancipated, that she had been a homemaker during the marriage, and had not been able to find employment. She alleged petitioner, having an MBA from Yale, could find work, but he had not sought employment. She claimed that petitioner should have substantial income imputed to him as he led an affluent lifestyle supported by his parents. Respondent asked for maintenance pursuant to the settlement agreement.

¶ 8     On April 30, 2015, the circuit court held a hearing on the petition at which both parties were present, and evidence was presented. In its May 15 written order, the court stated it had considered the evidence, the testimony, the credibility of the witness, and the statutory factors. The court ordered petitioner to pay respondent maintenance in the amount of $2417 per month, and child support at $781 per month. The court imputed petitioner had an annual income of $96,700 and ordered that the maintenance award was reviewable in five years.[1]

¶ 9     Petitioner filed a motion to reconsider on June 11, 2015. On August 25, 2015, respondent filed a petition for rule to show cause, alleging petitioner failed to pay the ordered maintenance and support, and failed to provide medical insurance. By agreement, a hearing was set for September 23, 2015. On that date, petitioner filed an emergency motion to continue, asserting he had a business meeting and was not available. The court denied petitioner's motion to reconsider, finding petitioner in indirect civil contempt for failure to make payments as ordered. The court

_____

[1] On appeal, petitioner provided the transcript of only one substantive hearing, on November 20, 2020, at which petitioner failed to appear.

ordered that petitioner could purge the contempt by paying specified dollar amounts for the maintenance, support, and insurance premiums he owed.

¶ 10    On December 8, 2016, respondent filed a petition for rule to show cause, alleging petitioner had fallen behind in paying the ordered child support, maintenance, and arrearage. The court set a hearing on this petition for January 18, 2017; petitioner failed to appear. The circuit court, again, held petitioner in indirect civil contempt, finding his new arrearage was $33,658.96. The court ordered petitioner to pay a contempt purge of $5000 within 30 days, and an additional $2000 within 45 days. It ordered petitioner to pay $640 monthly until the balance was paid in full, and to pay $781 per month as additional arrearage after the child support terminated in June 2017. Petitioner's support, maintenance, and arrearage payments were to remain current as an additional condition of the contempt purge.

¶ 11    On January 31, 2018, petitioner filed a petition to terminate maintenance, alleging both children were emancipated, and respondent was employed, making more than $70,000 per year. On March 13, 2018, respondent filed a petition for rule to show cause, alleging that petitioner made sporadic payments in random amounts, but had, again, fallen behind in all ordered payments. On March 26, 2018, respondent filed a motion to strike and dismiss petitioner's petition to terminate. On April 20, 2018, the circuit court granted respondent's motion to strike without prejudice, setting a hearing for May 21, 2018, on respondent's petition for rule to show cause.

¶ 12    Petitioner failed to appear for the May 21 hearing. The court, again, found him in indirect civil contempt for failure to pay $68,335 in child support, maintenance, and insurance, finding the total arrearage was now $72,207. The circuit court found the child support terminated retroactive to June 1, 2017, noting it had credited the support accumulated after that date against the arrearage. Petitioner's insurance contributions terminated as of January 1, 2018, as his younger son was now

on school healthcare insurance. Maintenance remained in effect at $2417 per month, and, as purge, petitioner was ordered to pay respondent $10,000—$5000 within 30 days, and another $5000 within 45 days. Arrearage payments were set at $1421 per month.

¶ 13 On September 13, 2018, petitioner moved for a change of venue, alleging respondent had relocated to Champaign County from Will County. On September 26, respondent filed a motion for writ of body attachment, alleging petitioner failed to meet the terms of the purge ordered on May 21. On November 2, 2018, the circuit court denied the change of venue, and, on its own motion, ordered a warrant to issue for petitioner's arrest, setting a full cash bond at $72,207.

¶ 14 On February 28, 2020, respondent filed another petition for rule to show cause and a petition to review and extend maintenance. The court continued respondent's maintenance pending further order of the court until the matter was resolved. Petitioner filed an answer in which he admitted the allegation that he was currently in arrears over $140,000 due to his failure to make any payments toward respondent's maintenance or the arrearage. On April 28, 2020, petitioner filed a petition to reduce or terminate maintenance. The court ordered an in-person hearing for November 2, 2020. Petitioner filed a motion to allow him to testify by Zoom. The court denied this motion on October 19, 2020, because a warrant had issued for petitioner's arrest, and he had not followed court orders. The court set a date of November 20, 2020, to hear respondent's two motions and petitioner's petition to reduce or terminate maintenance. Petitioner did not file a motion to reconsider the denial of his request to testify via Zoom.

¶ 15 On November 20, petitioner, again, failed to appear at the scheduled hearing. The trial court dismissed his petition to terminate maintenance. The court granted respondent's motion to extend maintenance for an indefinite time, finding petitioner in indirect civil contempt for his

continued failure to pay maintenance. The court ordered a new body writ to issue in the amount of $171,870, comprised of $147,134 in maintenance arrears, and $24,736 in interest.

¶ 16        On December 15, 2020, petitioner filed a notice of appeal of the circuit court's denial of his motion to allow testimony via Zoom on October 19, 2020, and the court's dismissal of his petition to reduce or terminate maintenance on November 20, 2020.

¶ 17                                   II. ANALYSIS

¶ 18        Petitioner first argues the circuit court did not follow the mandates of the Act (750 ILCS 5/501 *et seq.* (West Supp. 2015)), in its award and review of petitioner's maintenance obligations. The parties disagree as to the applicable standard of review. Petitioner argues *de novo* review applies, asserting this is a matter of statutory interpretation. Respondent argues that maintenance awards are reviewed for abuse of discretion. We find this matter does not involve a matter of statutory interpretation; therefore, we review for abuse of discretion.

¶ 19        Under the 2015 amendment to the Act (750 ILCS 5/504(a) (West Supp. 2015)), certain factors are used to determine if maintenance is appropriate, but the amount and duration of maintenance is calculated based on formulas provided in the Act. *In re Marriage of Burdess*, 2020 IL App (3d) 190342, ¶ 16 (citing *In re Marriage of Cole*, 2016 IL App (5th) 150224, ¶ 8). When appropriate, the court may depart from the statutory guidelines. *Id.* "We will not reverse a trial court's determination on review, modification, or termination of maintenance absent an abuse of discretion." *Burdess*, 2020 IL App (3d) 190342, ¶ 16 (citing *In re Marriage of Kocher*, 282 Ill. App. 3d 655, 660 (1996)). "An abuse of discretion takes place when 'the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *In re Marriage of Folley*, 2021 IL App (3d) 180427, ¶ 34 (quoting *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24). We may affirm the court's judgment on any basis contained in

the record. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24 (citing *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 16).

¶ 20 Petitioner argues the court failed to comply with the statutory guidelines, and its ruling continuing respondent's maintenance is arbitrary and unreasonable. Respondent argues that contrary to petitioner's claim, the court extended its previously ordered maintenance. Respondent argues the maintenance was reasonable given the length of the marriage and the allegations raised in respondent's petition to review and extend maintenance.

¶ 21 Petitioner has not provided the transcript of the April 30, 2015, hearing at which the docket entry shows the parties presented evidence and testimony regarding respondent's March 2 petition for maintenance. The court's subsequent May 15, 2015, written order states it had considered the evidence, testimony, the credibility of the witness, and the statutory factors. The court noted in its order that specific findings had been made of record.

> "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis."
>
> *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

"Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.* at 392. Because petitioner has not provided the transcript of the hearing on the original petition for maintenance in this appeal, there is no basis for holding that the court did not consider the statutory factors and abused its discretion in awarding maintenance in 2015, and that it abused its discretion when denying his petition to reduce or terminate maintenance, which

stemmed from the May 15 order. The court's May 15 written order specifically states it had considered the statutory factors.

¶ 22    Petitioner argues that respondent was in court on November 20, 2020, and she could have testified to the allegation in her petition, her income, and her efforts to become self-sufficient. Petitioner filed the petition to reduce or terminate maintenance. "The party seeking modification bears the burden of establishing a substantial change of circumstances." *In re Marriage of Shen*, 2015 IL App (1st) 130733, ¶ 132 (citing *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 198 (2011)). Petitioner did not appear for the November 20, 2020, hearing on his petition and respondent's response to his petition. Petitioner did not file any discovery or financial affidavits in support of his petition; his counsel stated petitioner could not present any documents to show his financial condition at that point in time. Counsel argued that respondent had not demonstrated a need for continued maintenance. The court noted petitioner had not paid any money since 2018. It continued the maintenance but terminated petitioner's child support and insurance payments.

¶ 23    Petitioner argues the court did not make findings as required under the Act. He relies on the Uniform Child Custody and Enforcement Act (750 ILCS 36/101 *et seq*. (West 2004)) and the Illinois Domestic Violence Act (750 ILCS 60/101 *et seq*. (West 1986)) to support his argument. This argument is unavailing. In reaching its decision regarding a maintenance award, the court must consider all relevant statutory factors, but it need not make explicit findings as to those factors. *In re Marriage of Virdi*, 2014 IL App (3d) 130561, ¶ 28 (citing *In re Marriage of Reynard*, 378 Ill. App. 3d 997 (2008)). " '[W]hen the basis for an award of maintenance is established in the record, it is not mandatory that the trial court make explicit findings for each of the statutory factors.' " *Shen*, 2015 IL App (1st) 130733, ¶ 135 (quoting *Blum v. Koster*, 235 Ill. 2d 21, 38

(2009)). As did the *Shen* court, we reject petitioner's argument that the court did not consider all the statutory factors solely because it did not make specific findings in its order. *Id.* ¶ 136.

¶ 24 The Act provides, "[f]or a marriage of 20 or more years, the court, in its discretion, shall order either permanent maintenance or maintenance for a period equal to the length of the marriage." 750 ILCS 5/504(b-1)(1)(B) (West Supp. 2015). The record shows the parties were married November 4, 1989. Therefore, they had been married for 23 years as of the dissolution of their marriage November 6, 2012. At the November 20 hearing, the court stated as to petitioner, "[i]f he was caught up and if he was here to testify to the amount that he's making, I may have considered terminating or reducing ***." We hold that the court did not abuse its discretion in ordering "guideline maintenance" on May 15, 2015. It did not abuse its discretion when continuing the "current maintenance" indefinitely until further order of the court in its November 20, 2020, written order.

¶ 25 Petitioner next argues the circuit court abused its discretion when finding him in indirect civil contempt without finding his noncompliance with orders was willful, considering evidence, or entering a written order. Respondent argues the court properly held petitioner in indirect civil contempt for his failure to pay any maintenance. Civil contempt occurs when a party fails to do something ordered by the court, resulting in the loss of a benefit to the opposing party. *In re Marriage of Virgin*, 2021 IL App (3d) 190650, ¶ 58 (citing *In re Marriage of Tatham*, 293 Ill. App. 3d 471, 479 (1997)). The contempt is indirect if it occurs outside the presence of the court. *Id.* (citing *Tatham*, 293 Ill. App. 3d at 480). "A finding of indirect civil contempt is a question of fact for the circuit court, which will not be disturbed on review unless it is against the manifest weight of the evidence or an abuse of discretion." *Id.* (citing *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984)).

¶ 26    "Evidence of non-compliance with a court order for maintenance payments establishes a *prima facie* case of civil contempt." *In re Marriage of Scordo*, 176 Ill. App. 3d 269, 273 (1988) (citing *Logston*, 103 Ill. 2d 266). The burden then shifts to the alleged contemnor to show his or her noncompliance was not willful. *Id.* (citing *Logston*, 103 Ill. 2d at 285). The record shows petitioner did not personally appear at any hearing scheduled from September 23, 2015, on. As of November 20, 2020, petitioner owed $171,870, including $147,134 in maintenance arrears, and $24,736 in interest. In his petition to reduce or terminate maintenance, petitioner did not claim he had paid the ordered maintenance, and he does not make that claim on appeal. Below, petitioner did not attempt to show his noncompliance with court-ordered maintenance was not willful, and he also does not make that claim on appeal. In fact, in his response to respondent's petition for rule to show cause filed on April 28, 2020, petitioner admits he was in arrears on the ordered maintenance in the amount of over $140,000.

¶ 27    "[A] person charged with indirect civil contempt is only entitled to minimal due process, including the right to notice and an opportunity to be heard." *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 40 (citing *In re Marriage of Betts*, 200 Ill. App. 3d 26, 52-53 (1990)). Additionally, a civil-contempt order must be in writing, and it must specify what the contemnor is required to do to purge himself of the contempt. *Id.* (citing *Pancotto v. Mayes*, 304 Ill. App. 3d 108, 112 (1999)). Petitioner was given notice of the November 20 hearing. His attorney was present, but petitioner chose not to attend and exercise his opportunity to be heard. Thus, he was afforded the requisite minimal due process. The court's civil contempt order is in writing, and the court specified what petitioner was to do to purge himself of the civil contempt. We hold the circuit court's findings of fact were not against the manifest weight of the evidence, and the court did not abuse its discretion in holding petitioner in indirect civil contempt for failing to pay the court-ordered maintenance.

¶ 28                                    III. CONCLUSION

¶ 29          For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 30          Affirmed.